IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


HELEN MAYBERRY,                                 3:12-CV-00739-BR

          Plaintiff,

                                                OPINION AND ORDER

v.

TRANSPORTATION COMMUNICATIONS
UNION/IAM,

          Defendant.


HELEN MAYBERRY
15711 N.E. Beech Street, #5B
Portland, OR 97230

          Plaintiff, *Pro Se*

PAUL C. HAYS
Carney Hays & Marsh
1500 S.W. First Avenue
Suite 1015
Portland, OR 97201
(503) 221-0611

ELIZABETH A. ROMA
Guerrieri, Clayman, Bartos & Parcelli, P.C.
1625 Massachusetts Avenue, N.W.
Washington, D.C. 20036
(202) 624-7400

          Attorneys for Defendant


1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendant's Motion (#7) to Dismiss Pursuant to FRCP 12(b)(6) Or Alternatively For Summary Judgment.  For the reasons that follow, the Court concludes it lacks subject-matter jurisdiction over this matter, and, therefore, the Court **DENIES as moot** Defendant's Motion to Dismiss Or Alternatively for Summary Judgment and **REMANDS** this matter to Multnomah County Circuit Court.


<u>**BACKGROUND**</u>

The following facts are taken from Declarations filed in support of Defendant's Motion to Dismiss Or Alternatively for Summary Judgment and are undisputed unless otherwise noted:

Defendant Transportation Communications Union/IAM is a national labor organization certified to represent various classes of employees under the Railway Labor Act (RLA), 45 U.S.C. § 151, *et seq*.  Defendant is a duly authorized collective-bargaining representative for clerical employees of the Union Pacific Railroad Company (UP) including the utility clerks employed at UP's Albina facility in Portland, Oregon.  Defendant and UP "maintain" a collective-bargaining agreement (CBA) governing the wages and working conditions of, among others, the Albina utility clerks, including Plaintiff Helen Mayberry.

In August 1991 Defendant and UP entered into a Utility

2 - OPINION AND ORDER

Clerks Agreement, which provides, among other things, that UP will "assign a preponderance of crew hauling duties in" the Portland area, including Albina, to clerical employees.

At some point Defendant discovered UP was assigning crew-hauling duties in the Portland area to contractors when Albina utility clerks were available to report and to perform work.  On August 21, 2008, Local Lodge 1223 Chairperson Julie Smart, in accordance with the grievance procedures set out in the CBA, filed a number of grievance claims against UP on behalf of five Albina utility clerks, including Plaintiff.  The Union alleged UP failed to assign utility clerks to certain crew-hauling assignments in violation of the Utility Clerks Agreement and the CBA.

Defendant alleges Plaintiff contacted Smart shortly after August 21, 2008, and advised her that Plaintiff did not authorize the filing of the grievance claim and Defendant was not to file any more grievance claims on her behalf unless Plaintiff personally requested it.

The Union also filed later grievances against UP on the same issue in addition to violations of the CBA and Utility Clerks Agreement, but Plaintiff was not included as a grievant based on her request to Smart.  Plaintiff, however, authorized the filing of some grievance claims through Defendant as to other, unrelated matters.

3 - OPINION AND ORDER

On April 15, 2010, Defendant and UP entered into a
settlement agreement that resolved all of the utility-clerk
grievances related to the outsourcing of work, including the
August 2008 grievance filed by Defendant on behalf of Plaintiff.
Under the terms of the settlement, UP agreed to pay the
individual grievants $15 for each alleged violation.  Because the
August 2008 grievance filed on behalf of Plaintiff documented
five instances when Defendant asserted Plaintiff should have been
assigned crew-hauling work, Plaintiff was entitled to receive
$75.00 as a result of the settlement.

On September 24, 2010, Steven Mether, National Union
Representative for Defendant, advised Plaintiff that the utility
clerk grievances, including Plaintiff's August 2008 grievance,
had been settled, and, as a result, Plaintiff would receive $75.

On December 29, 2010, Plaintiff advised Mether that she had
received his September 24, 2010, letter, but she had not yet
received the $75.

On January 5, 2011, Mether advised Plaintiff that he had
contacted UP, and UP informed him that it had made a payroll
error and paid Plaintiff only $15.  UP confirmed they issued
Plaintiff a check for the remaining $60 as of January 5, 2011.

On March 24, 2011, Plaintiff sent a letter to Robert
Scardelletti, International President of TCU, in which she
advised she was aware that another utility clerk had filed a

4 - OPINION AND ORDER

grievance against UP, which "was paid and Albina Clerks were compensated, with some receiving over $5,000.  I received a measly $75.  As a union member, paying the same dues as other clerks, how do you justify this discrepancy?"  Pl.'s Resp., Ex. 2.

On April 11, 2012, Plaintiff filed a small claim and notice of small claim in Multnomah County Circuit Court against Defendant in which she alleges "I, Plaintiff, claim that on or about Aug [*sic*] 2008, [Defendant] owed me the sum of $5,000 because a group claim against [UP] was filed for violating the Clerk's Utility Agreement and [Defendant] failed to include me. I am now and was a clerk at that time."

On April 26, 2012, Defendant removed the matter to this Court on the ground that the RLA completely preempts Plaintiff's claim, and, therefore, this Court has federal-question jurisdiction.

On May 7, 2012, Defendant filed a Motion to Dismiss Or Alternatively For Summary Judgment.

On June 12, 2012, the Court issued to Plaintiff a Summary Judgment and Motion to Dismiss Advice Notice.

On June 18, 2012, Plaintiff filed a Response to Defendant's Motions.

The Court took this matter under advisement on July 20, 2012.

5 - OPINION AND ORDER

**DISCUSSION**

In its Notice of Removal, Defendant asserts this matter is removable pursuant to 28 U.S.C. § 1441 because the RLA completely preempts Plaintiff's state-law cause of action.  Specifically, Defendant contends even though Plaintiff did not characterize her claim as such, Plaintiff's claim is one for breach of Defendant's duty of fair representation in violation of the CBA.  Defendant asserts such claims are completely preempted under the RLA and cites *Hawaiian Airlines, Inc. v. Finazzo*, 512 U.S. 246 (1994), to support its assertion.

**I.    Subject-matter jurisdiction generally**

Federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  A defendant may remove an action filed in state court to federal court if the federal court would have original subject- matter jurisdiction over the action. *See* 28 U.S.C. § 1441.

To determine whether an action arises under federal law, courts apply the "'well-pleaded complaint rule.'" *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1243 (9th Cir. 2009) (quoting *Toumajian v. Frailey*, 135 F.3d 648, 653 (9th Cir. 1998). Under the well-pleaded complaint rule, a claim arises under federal law "'only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *Id*.

(quoting *Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1075 (9th Cir. 2005)).

"'A resulting corollary to the well-pleaded complaint rule, known as the complete preemption doctrine, provides . . . 'Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'" *Id.* (quoting *Toumajian*, 135 F.3d at 653). "'[I]f a federal cause of action completely preempts a state cause of action[,] any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." *Id.* at 1243-44 (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 24 (1983)).

"The removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand." *Id.* at 1244 (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)). "The presumption against removal means . . . 'the defendant always has the burden of establishing that removal is proper.'" *Id.* (quoting *Gaus*, 908 F.2d at 566).

## II. Preemption under the RLA

As noted, Defendant relies on *Hawaiian Airlines* to support its assertion that this matter is properly removed because the RLA completely preempts Plaintiff's state-law claim. The Ninth Circuit, however, rejected that argument in *Moore-Thomas*.

In *Moore-Thomas* the defendant, an airline, employed the plaintiff as a customer-service agent.  A CBA between the defendant and its clerical, office, and passenger-service employees governed the plaintiff's employment.  In March 2006 the plaintiff and others filed a class-action complaint against the defendant in state court.  Their complaint asserted the defendant willfully failed to pay them all wages due upon termination in violation of state law.  553 F.3d at 1242.  The defendant timely removed the action to the district court pursuant to 28 U.S.C. § 1441(a) on the ground that the district court had federal-question jurisdiction because the RLA completely preempted and governed the action.  After the matter was removed to federal court, the defendant moved to dismiss the plaintiff's complaint on the ground that the district court lacked subject-matter jurisdiction because the RLA preempted her state-law claim and she had not complied with the RLA's mandatory arbitration provisions.  The plaintiff moved to remand on the ground that the district court lacked subject-matter jurisdiction because the RLA did not preempt her claim.  *Id*. at 1243.  The district court concluded resolution of the plaintiff's state-law claim would require interpretation of the CBA, and, therefore, the RLA completely preempted the plaintiff's claim.  Accordingly, the district court concluded removal was proper, denied the plaintiff's motion to remand, and granted the defendant's motion

to dismiss.  The Ninth Circuit reversed on the ground that the RLA "does not provide a basis for finding complete pre-emption . . . and . . ., as a result, [the defendant's] removal on the grounds of the RLA's governing this action was improper."  *Id*. at 1244.  The Ninth Circuit cited *Hawaiian Airlines*:

> [T]he Supreme Court held that the pre-emption standard applied under § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, is also appropriate for addressing questions of RLA pre-emption — *i.e.*, that the RLA similarly "pre-empts state law only if a state-law claim is dependent on the interpretation of a CBA." *Hawaiian Airlines*, 512 U.S. at 262-63 & n.9. Given the intra-circuit conflict in some of our cases . . . the district court here understandably impliedly interpreted the analogy drawn between LMRA and RLA preemption in *Hawaiian Airlines* as rendering the two standards fully coequal such that LMRA complete pre-emption applies in the RLA context as well.  Specifically, the district court noted that "the preemption standard in the RLA context 'is virtually identical to the pre-emption standard . . . in cases involving § 301 of the LMRA . . . .'" (quoting *Hawaiian Airlines*, 512 U.S. at 260).  The district court then stated, "LMRA § 301 completely preempts 'claims founded directly on rights created by collective bargaining agreements, and also claims substantially dependent on analysis of a collective bargaining agreement,'" (quoting *Cramer v. Consol. Freightways, Inc*., 255 F.3d 683, 689 (9th Cir. 2001)(en banc)(internal quotation marks omitted)), and assumed throughout the rest of the opinion that the RLA is also subject to complete pre-emption.

*Moore-Thomas*, 553 F.3d at 1244.  The Ninth Circuit, however, explained

> [i]n *Sullivan v. American Airlines*, 424 F.3d 267 (2d Cir. 2005), the Second Circuit concluded that the Supreme Court's decision in *Beneficial*

9 - OPINION AND ORDER

*National Bank v. Anderson*, 539 U.S. 1 (2003),
clarified that complete pre-emption does not apply
under the RLA. *Sullivan*, 424 F.3d at 275.  The
Second Circuit cited the Supreme Court's
observation in *Beneficial National Bank* to the
effect that "'[i]n the *two categories* of cases
where this Court has found complete preemption —
certain causes of action under the LMRA and ERISA
— the federal statutes at issue provided the
exclusive cause of action for the claim asserted
and also set forth procedures and remedies
governing that cause of action.'"  *Sullivan*, 424
F.3d at 275 (quoting *Beneficial Nat'l Bank*, 539
U.S. at 8 (emphasis added)).  According to the
Second Circuit, "[h]ad *Hawaiian Airlines*
established that § 184 of the RLA, like § 301 of
the LMRA, completely preempted state-law causes of
action within its scope, the Court in *Beneficial
National Bank* would have discussed three, not two,
categories of cases involving complete
preemption."  *Id.*

                        * * *

[W]e are persuaded by the reasoning of *Sullivan*,
and likewise hold that the RLA is not subject to
complete pre-emption.

*Id.* at 1244-45.  The Ninth Circuit also noted:

[U]nder the complete pre-emption exception to the
well-pleaded complaint rule, "federal law
displaces a plaintiff's state-law claim, no matter
how carefully pleaded."  *Valles*, 410 F.3d at 1075.
By contrast, under ordinary preemption, the
well-pleaded complaint rule applies such that "[a]
federal law defense to a state-law claim . . .,
even if the defense is that of federal pre-emption
and is anticipated in the plaintiff's complaint,"
is insufficient to confer federal jurisdiction if
the complaint on its face does not present a
federal question.

*Id.* at 1244.  Accordingly, the Ninth Circuit concluded

[e]ven assuming [the defendant's] removal petition
demonstrates that the RLA provides a complete
federal defense to [the plaintiff's] state[-law]

> claim, because the RLA is subject to ordinary
> rather than complete pre-emption, [the
> plaintiff's] complaint does not arise under
> federal law and is not removable.

*Id*. at 1246. Accordingly, the Ninth Circuit reversed and remanded the matter. *Id*.

Here, as in *Moore-Thomas*, Plaintiff's complaint does not contain a federal claim. Even if Defendant's Notice of Removal establishes the RLA provides a complete federal defense to Plaintiff's claim, Plaintiff's claims do not arise under federal law because the RLA is subject to "ordinary" rather than complete preemption, and, therefore, the matter is not removable.

Accordingly, the Court concludes it lacks subject-matter jurisdiction and remands this matter to Multnomah County Circuit Court for further proceedings.

## CONCLUSION

Because the Court concludes it lacks subject-matter jurisdiction over this matter, the Court **DENIES as moot** Defendant's Motion (#7) to Dismiss Pursuant to FRCP 12(b)(6) Or Alternatively For Summary Judgment and **REMANDS** this matter to

11 - OPINION AND ORDER

Multnomah County Circuit Court for further proceedings.

IT IS SO ORDERED.

DATED this 20th day of September, 2012.


                                    /s/ Anna J. Brown
                                    _____
                                    ANNA J. BROWN
                                    United States District Judge


12 - OPINION AND ORDER